UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Rebecca Taylor and Karl Hunter,<br>  *Plaintiffs*,<br><br>  v.<br><br>The Housing Authority of New Haven, Karen Dubois-Walton, Jimmy Miller, David Alvarado, Ilona Leffingwell, Louise Persall, Robert Solomon, and Jason Turner,<br>  *Defendants*. | Civil No. 3:08cv557 (JBA)<br><br><br><br><br>March 9, 2009 |

**RULING ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [Doc. # 46], GRADY REYNOLDS AND PLAINTIFFS' MOTION TO INTERVENE [Doc. # 83], and PLAINTIFFS' MOTION TO APPOINT CLASS COUNSEL [Doc. # 101]**

Plaintiffs Rebecca Taylor and Karl Hunter allege that the Housing Authority of New Haven ("HANH")[1] discriminates against them and other disabled Section 8 tenants by failing to afford them certain accommodations to which they claim entitlement under the statutes and regulations governing HANH's implementation in New Haven of the Section 8 Housing Choice Voucher Program (the "Section 8 Program") of the U.S. Department of Housing and Urban Development ("HUD"). Plaintiffs now move for class certification on two of their claims, which Defendants oppose.

---

[1] Plaintiffs also bring suit against HANH Executive Director Karen Dubois-Walton, former HANH Executive Director Jimmy Miller, and five members of the Housing Authority Commission for the City of New Haven (David Alvarado, Ilona Leffingwell, Louise Persall, Robert Solomon, and Jason Turner).

I.    **Background**

HANH operates HUD's Section 8 Program within the area of New Haven.[2] Among the participants in HANH's Section 8 Program are the named plaintiffs in this suit: Ms. Taylor, who suffers from spina bifida and uses a wheelchair, and Mr. Hunter, who has used a wheelchair since 1989 when he became permanently disabled after breaking his neck. (2d Am. Compl. [Doc. # 81] at page 1 (Taylor); Affidavit of Karl Hunter, Ex. 2 to Hunter's Mot. Intervene [Doc. # 45] ("Hunter Aff."), at ¶ 2.)  At the time suit was brought, both had sought to move from the apartments in which they lived, and both claim that HANH did not help them locate accessible residences and/or help them to move in the ways and to the extent to which it was obligated under federal law.  Specifically, Plaintiffs assert that HANH failed to provide them with a listing of apartments that are both available and accessible to them (the "Accessible Unit List" or "AUL") and failed to inform them of the availability of, or provide them with, "mobility counseling" (a service which includes helping them identify apartments accommodating their needs, transporting them during their apartment search, helping them complete and submit rental applications, physically moving them and their belongings to their new apartments, and providing other forms of support).  Plaintiffs allege that HANH has a policy and/or practice of failing to maintain and provide an AUL, and of failing to offer or provide mobility counseling, to households including at least one disabled member to

---

[2] Defendants admit that as the administrator of the Section 8 Program for this area, HANH is subject to the regulations under which Plaintiffs bring this suit: 24 C.F.R. §§ 8.28(a)(3) and 100.204.  (Defs.' Answer to 2d Am. Compl. [Doc. # 82] at ¶¶ 2 & 3.)

which HANH has issued a Housing Certificate or Housing Voucher ("Disabled Section 8 Household"). In Counts I and III of their complaint,[3] they allege that Defendants' failure to provide the AUL and offer and provide mobility counseling constitutes discrimination on the basis of their disability[4] in violation of the Fair Housing Act, 42 U.S.C. § 3604(f), violates Defendants' duty to provide Plaintiffs with "reasonable accommodations" under 24 C.F.R. § 100.204, and violates 24 C.F.R. § 8.28(a)(3). (2d Am. Compl. [Doc. # 81] at ¶¶ 34–39 & 45–50.)

At oral argument, the Court proposed[5] a class definition which the parties agreed encapsulated Plaintiffs' claims and should be the basis for analyzing whether Plaintiffs' Motion for Class Certification should be granted under Federal Rule of Civil Procedure 23(b)(2):

---

[3] Plaintiffs do not seek to certify a class as to Counts II or IV of the Second Amended Complaint. (*See* Pls.' Suppl. Mem. Supp. Mot. Class Cert. [Doc. # 67] at 2 n. 3.)

[4] While in some cases Congress has replaced the term "handicapped" with "the more politically correct term 'disabled,'" *see* Alison Nodvin Barkoff, *Revisiting de jure Educational Segregation: Legal Barriers to School Attendance for Children with Special Health Care Needs*, 8 Cornell J.L. & Pub. Pol'y 135, 141 n. 47 (1998), the terminology of the regulations at issue here refer to the "handicaps" of members of households participating in the Section 8 Program. *See* 24 C.F.R. 8.3 (defining "[h]andicap" and "[i]ndividual with handicaps" for purposes of, *inter alia*, § 8.28(a)(3)); *id.* § 100.201 (defining "handicapped" for purposes of, *inter alia*, § 100.204). The parties agree that the definition of "handicap" is the same for the purposes of considering the regulations and statutes at issue.

[5] "It is well-established that a court has the inherent power and discretion to redefine and modify a class in a way which allows maintenance of an action as a class action." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 241 F.R.D. 435, 438 (S.D.N.Y. 2007).

>All households including at least one handicapped person to which the Housing Authority of New Haven has issued a Housing Certificate or Housing Voucher, and:
>
>>(a) that did not receive a list of available, accessible apartments, as required under 42 U.S.C. § 3604(f), 24 C.F.R. § 100.204, and/or 24 C.F.R. § 8.28(a)(3); and/or
>
>>(b) that did not receive Mobility Counseling services, or offer thereof, as required under 42 U.S.C. § 3604(f), 24 C.F.R. § 100.204, and/or 24 C.F.R. § 8.28(a)(3).

For the reasons that follow, Plaintiffs' motion for class certification will be granted.

## II.   Standards for Class Certification

"It would seem to be beyond dispute that a district court may not grant class certification without making a determination that all of the Rule 23 requirements are met." *In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 40 (2d Cir. 2006) ("*In re IPO*").

Plaintiffs moving for class certification must demonstrate that their proposed class meets the requirements of Rule 23(a) and (b). Rule 23(a) outlines "four familiar features" that must be present if a class is to be certified: numerosity, commonality, typicality, and adequacy of representation. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008); *see also* Fed. R. Civ. P. 23(a). In addition to these four express criteria, there is an implicit but "fundamental" requirement under Rule 23(a) that a certified class be ascertainable, i.e., "[t]he class that plaintiffs seek to certify must be readily identifiable so that the court can determine who is in the class, and thus, who is bound by the ruling. A class is ascertainable when defined by objective criteria that are administratively feasible, without a subjective determination." *McBean v. City of New York*, 228 F.R.D. 487, 492 (S.D.N.Y. 2005). Plaintiffs seek certification under Rule 23(b)(2), under which their action must allege that "the party opposing the class has acted or refused to act on grounds that apply generally

4

to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

In the Second Circuit, although a court considering a motion for class certification must "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met," *In re IPO*, 471 F.3d at 42, it should avoid holding "a protracted mini-trial of substantial portions of the underlying litigation," *id.* 41, as it seeks to obtain this evidence. It must consider the merits of the lawsuit to the extent necessary to determine whether the Rule 23 requirements have been met, but is precluded from considering any dispute about the suit's merits unrelated to these requirements. *Id.*

### III.   Discussion

####    A.   *Allegations of Unlawful Policies and/or Practices*

Plaintiffs allege that "HANH has failed to create [a] current list of available, accessible apartments known to it, as required by 24 C.F.R. § 8.28(a)(3)," and thus is unable to provide such list to households which include a disabled individual and to which it has issued a Housing Certificate or Housing Voucher. (2d Am. Compl. ¶ 6.) They further allege that Defendants have an unlawful a "policy, pattern and/or practice . . . toward disabled persons on Section 8 who ask for HANH's assistance in searching for an apartment" of not providing mobility counseling and instead telling such persons that "searching for an apartment [is their] responsibility under the Section 8 [P]rogram." (*Id.* ¶¶ 17–19.)

In support of their class certification motion Plaintiffs submit a review of HANH in which a HUD analyst stated that HANH believed, incorrectly, that it did not have "the responsibility of locating accessible units" within its jurisdiction. (HUD Investigation

5

Report, Ex. 1 to Pl.'s Original Compl. [Doc. # 3], at 2.) Plaintiffs also submit a three-page list Defendants provided on August 4, 2008, entitled "Accessible Housing in the New Haven area," listing only street addresses with accessible apartments but not which specific units are accessible. (Accessible Housing in the New Haven area, Ex. D to Pls.' Mem. Supp. Cert.) This list contains a disclaimer that HANH has not verified the information, which was self-reported by landlords, that it "is not comprehensive," and that "it does not imply an endorsement nor a guarantee of quality or accessibility." It directs readers to "[c]heck with [each apartment's] Rental Office for information about pricing and availability." In a short notice for "Families Who Require Accessible Housing," HANH offers an extension of these families' voucher terms as a method of "tak[ing] into account the special problem of ability to locate an accessible unit," and states that it "will provide reasonable accommodations of our policies, procedures, practices, or services if necessary" for persons with disabilities. (*Id.*) Plaintiffs also point to the July 2007 admission of former HANH Executive Director Jimmy Miller that because HANH "does not do searches for apartments," its staff "do[es] not know if any [four-bedroom units in the area] are currently available." (Miller's Resp. to Req. Adm., Ex. B to Pl.'s Original Compl., at No. 1.) In support of the class claim regarding the absence of mobility counseling, Plaintiffs submit an HANH report prepared in July 2008 in which it states that while it has published requests for proposals for mobility counseling services, it is "still unsuccessful in finding a vendor who is willing to service both for families needing accessible units and for families seeking to relocate to suburban areas" within its "newly defined service area," and acknowledges that it has responded only to those Disabled Section 8 Households which have actually requested assistance searching for accessible units. (HANH 504 Voluntary Compliance Agreement, Four Quarterly Report, July 9, 2008, Ex. F

to Pls.' Mem. Supp. Cert., at 2.) Finally, Plaintiffs cite testimony of Lashanda Jones, a Section 8 Specialist with HANH who works with individual participant households, that neither she, nor any other staffer she knows of, assists Disabled Section 8 Households to locate accessible units. (Pls.' Mem. Supp. Cert. at 8–9 (citing Jones Dep., Ex. C to Pls.' Mem. Supp. Cert., at 68–69).)

Claiming lack of foundation for Plaintiffs' claim of pattern and practice, Defendants point to Ms. Jones's testimony that she responded to Disabled Section 8 Household members' requests for reasonable accommodation made to her by assisting them in completing and submitting the paperwork necessary to formalize their requests, and that she has never heard a Section 8 participant state that HANH has not helped him or her seek accessible housing upon request. (Defs.' Obj. Pls.' Mot. Class Cert. [Doc. # 59] ("Defs.' Obj. Cert.") at 6–7 (citing Jones Dep., Ex. A, at 69–74).) However, Ms. Jones also testified that she does not "have any responsibility for granting or denying a reasonable accommodations request," but instead "pass[es] it along" to another office. (Jones Dep., Ex. A to Defs.' Obj. Cert., at 74:19–23.) Defendants also submit affidavits of Laura Woodie, HANH's Acting Reasonable Accommodation Coordinator, and Iris Santiago, HANH's Service Center Director, both of whom aver that they have assisted disabled Section 8 participants. (*See* Woodie Aff., Ex. 1 to Defs.' 2d Suppl. Mem. Supp. Obj. Pls.' Mot. Class Cert. [Doc. # 76] ("Defs.' 2d Suppl. Obj."), at ¶¶ 2–12; Suppl. Woodie Aff. [Doc. # 87] at ¶¶ 2–4; Santiago Aff., Ex. 2 to Defs.' 2d Suppl. Obj., at ¶¶ 1–9.) Finally, Defendants provide examples of forms and letters that they argue "show the conduct of HANH in regard to the issue of addressing reasonable accommodation issues." (Defs.' 2d Suppl. Obj. at 2; *see also id.* at Exs. 3–6.)

B.   *Class Certification under Rule 23(a) Requirements*

i.   *Ascertainability*

Defendants argue that by any definition the class is not "ascertainable" because HANH has no policy discriminating against Disabled Section 8 Households (Defs.' Obj. Cert. at 8), and because Defendants treat different individuals differently based on HANH staff members' interactions with different Section 8 participants (*id.* 8–9). Defendants' argument misses a critical distinction between considerations of ascertainability and the merits. A class is ascertainable if its members can be identified by reference to objective criteria and if such identifications can be made in an administratively feasible manner. *McBean*, 228 F.R.D. at 492. The questions of what HANH's policy or practice is and whether it is lawful are the core merits questions of this lawsuit, and they need not be resolved to determine the *ascertainability* of the class. Therefore, Defendants' argument that no ascertainable (or sufficiently numerous[6]) class exists because the challenged policy or practice does not exist is the argument foreclosed at the class certification stage by *Eisen* and *In re IPO*'s preclusion of consideration of merits questions unrelated to Rule 23 requirements. *See In re IPO*, 471 F.3d at 41 (explaining that *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), "preclude[s] consideration of the merits . . . when a merits issue is unrelated to a Rule 23 requirement").

---

[6] Defendants make a similar argument regarding numerosity—namely, that a determination of numerosity would be speculative because the court would have to assume the existence of the alleged policy—and in fact conflate their arguments as to ascertainability and numerosity in their opposition to class certification. *See infra.* For the reasons articulated here, such argument must fail.

8

Plaintiffs' claims relate to Defendants' alleged failure to provide two distinct items: an Accessible Units List and mobility counseling.  In Count I of their Second Amended Complaint Plaintiffs allege that Defendants' failure to provide these items violates 42 U.S.C. § 3604(f), a statute that bars discrimination on the basis of the disability of a person in a Section 8 Program participant's household, as well as 24 C.F.R. § 100.204, a regulation that requires Defendants to provide "reasonable accommodation" including services such as an AUL and mobility counseling.  In Count III they allege that this same failure violates 24 C.F.R. § 8.28(a)(3), a regulation specific as to the AUL and to the provision of other assistance "if necessary." Defining the class as those who were eligible for but did not receive either or both of these items provides objective criteria whose applicability to a given household can be determined in an administratively feasible manner and thus sets forth a sufficiently ascertainable class.

> ii.  *Numerosity.*

A proposed class may not be certified unless "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The Court need not determine the precise number of people in the putative class in order to determine that the requirement of numerosity is satisfied.  *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").  In the Second Circuit "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

The evidence here suggests that the class will consist of far more than 40 members. Plaintiffs show that of the 1,640 households to which HANH issued a Housing Voucher or Housing Certificate between 2003 and 2006, 386—approximately 24%—of them were

Disabled Section 8 Households. (Pls.' Mem. Supp. Mot. Class Cert. [Doc. # 47] ("Pls.' Mem. Supp. Cert.") at 4–5 (citing "Summary of New Vouchers" (spreadsheet provided to Plaintiffs by Defendants), Ex. 15 to Pl.'s Mem. Supp. Mot. Prelim. Inj. [Doc. # 12], at 2).) Plaintiffs argue that applying this percentage to the total number of households participating in the Section 8 Program through HANH yields approximately 691 Disabled Section 8 Households to which Defendants have not provided an acceptable AUL.

Defendants argue that Plaintiffs' showing of numerosity is mere speculation which is insufficient under *Russo v. CVS Pharmacy, Inc.*, 201 F.R.D. 291 (D. Conn. 2001). *Russo* held that a plaintiff seeking to certify a class in his suit for injunctive and monetary relief for "alleged warrantless seizure of his private pharmaceutical records" from a pharmacy did not satisfy the numerosity requirement because "an individual civil rights case cannot be transformed into a class action simply by virtue of the ipse dixit that since it happened to the plaintiff, it must have happened to others, without some indication allowing the Court to make the 'reasonable estimate' that the law requires." *Id.* 295. *Russo* is inapposite here. Plaintiffs offer HANH documents which list the number of Housing Vouchers that HANH issued as well as the number of such vouchers it issued to Disabled Section 8 Households. Unlike the speculation, conclusory assertions, and unreasonable assumptions offered by the plaintiff in *Russo*, here the Court is able to estimate that the size of the class exceeds 40 persons on the basis of Defendants' own statistics.

In addition, to the large number of putative class members, joinder may be impracticable for other reasons. *See Robidoux*, 987 F.2d at 936 ("Determination of practicability [of joinder] depends on all the circumstances surrounding a case, not on mere numbers[, including] judicial economy arising from the avoidance of a multiplicity of

10

actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members."). Here, the putative class members—members of Disabled Section 8 Households—are definitionally people of limited financial means which would be further strained if they were required to institute individual suits or to join this lawsuit individually. Furthermore, since this action seeks only injunctive, and not monetary, relief, the putative class members are not financially incentivized either to join this suit or institute their own individual suits.

Plaintiffs' evidence of the order of magnitude of putative class members, coupled with these other factors, show the class to be so numerous that joinder of all members is impracticable[7] under Rule 23(a)(1).

### iii.   Commonality and Typicality

A class may not be certified unless "there are questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), and "the claims or defenses of the representative parties are typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3). As the Supreme Court has noted, these commonality and typicality requirements "tend to merge" because "[b]oth serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n. 13 (1982).

---

[7] Joinder only need be *impracticable*; it need not be *impossible. Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate").

Here, plaintiffs allege discrimination arising from Defendants' application of policies or practices, i.e., that Defendants acted towards all "[putative] class members in the same general fashion" by denying them an AUL and mobility counseling by virtue of a common policy or practice and in violation of the same regulations, preventing their full enjoyment of the Section 8 Program. *See Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94 (S.D.N.Y. 2006) ("In discrimination cases commonality does not mandate that all class members make identical claims and arguments, but requires that 'the gravamen of the [c]omplaint is that defendants discriminated against class members in the same general fashion.'") (citation omitted, alteration in *Attenborough*).

Defendants argue that the proposed classes suffer from a lack of commonality and typicality because "each of the plaintiffs has a unique history, where placement decisions were made by a variety of different individuals considering the unique factors of each plaintiff's situation." (Defs.' Obj. Cert. 14.) As a result, they argue, "[i]t would be difficult for this court to find either commonality among the named plaintiffs or with absent class members." (*Id.* 14–15.) They further argue that there is no commonality or typicality because "the harm allegedly caused each member of the proposed class resulted from some separate, distinct act or incident involving these defendants," such that "[t]he class members were not all injured as a result of one single act or event." (*Id.* 15.) Defendants' arguments misconstrue Plaintiffs' allegations. While the circumstances and nature of each plaintiff's and class member's disability may differ, Plaintiffs allege that Defendants' discriminatory policy or practice applies to them regardless of these differences, and that Defendants' application of that policy or practice to them is unlawful for reasons unrelated to each person's individual disability. *See Robidoux*, 987 F.2d at 936–37 ("When it is alleged that the

12

same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Plaintiffs' and the putative class members' theory of liability is based on Defendants' alleged policy in relation to the *fact* of their disability, and not to the *nature* of their individual disabilities. Cf. *Raymond v. Rowland*, 220 F.R.D. 173, 180 (D. Conn. 2004) (certifying a class of plaintiffs challenging the failure of the Connecticut Department of Social Services ("DSS") to reasonably accommodate disabled persons, and explaining that "the question of reasonable accommodations is common to the class as defined here since Plaintiffs are challenging acts and omissions of DSS that are not specific to any particular Plaintiff"). Thus, the *fact* that the named plaintiffs are disabled Section 8 tenants—and thus members of Disabled Section 8 Households—makes them typical of the class. They represent the universe of factual scenarios encompassed by their theories of liability in Counts I and III because both Ms. Taylor and Mr. Hunter are disabled and use wheelchairs and are "handicapped" for purposes of 42 U.S.C. § 3604(f) and 24 C.F.R. §§ 8.28 and 100.204, the statute and regulations under which they bring suit. Ms. Taylor sought help from an HANH staff member in searching for an accessible apartment, was refused, and was informed that searching for an apartment was her responsibility, reflecting a "policy, pattern and/or practice of HANH toward disabled persons on Section 8 who ask for HANH's assistance in searching for an apartment." (2d Am. Compl. ¶¶ 15–19.) Mr. Hunter was never provided an AUL by HANH, did not know that such a list was available, and never received any assistance searching for an apartment. He did not know that he could request either the AUL or assistance. (Hunter Aff. ¶¶ 9–11.)

It may be, as Defendants argue, that no discriminatory policies exist, such that Plaintiffs cannot prevail on their theories of liability underpinning the two counts for which they seek class certification. This merits dispute, however, does not affect determination of whether the requirements of typicality and commonality have been met. These requirements having been satisfied, the Court next addresses the requirement of adequacy of representation.

### iv. Adequacy of Representation

A class may only be certified if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). While the commonality and typicality requirements "also tend to merge with the adequacy-of-representation requirement, . . . the [adequacy-of-representation] requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n. 13. Although Defendants refer to Ms. Taylor's changed circumstances *after* suit was commenced and a preliminary injunction requiring HANH to provide her with assistance was granted on joint stipulation (*See* Defs.' Suppl. Mem. Supp. Obj. Class Cert. [Doc. # 65] at 8–9; Order Granting Pls.' Mot. Prelim. Inj. [Doc. # 23]), they do not otherwise challenge the adequacy of representation that the named plaintiffs would provide to class members. HANH has not suggested that Mr. Hunter's claim is moot. As to the effect of the preliminary injunction requiring HANH to assist Ms. Taylor, "[w]here class claims are inherently transitory, 'the termination of a class representative's claim does not moot the claims of the unnamed members of the class,'" and in any event "[e]ven where the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire

controversy." *Robidoux*, 987 F.2d at 938–39 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11 (1975), and citing *Sosna v. Iowa*, 419 U.S. 393, 401–02 & n. 11(1975) and *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52 (1991)). As a result, and because Ms. Taylor and Mr. Hunter represent all factual scenarios encompassed by their class claims, the Court determines that Rule 23(a)(4) is satisfied here.

        C.        *Class Certification under Rule 23(b) Requirement*

Plaintiffs seek certification of a class pursuant to Rule 23(b)(2). A class may be certified under this subsection when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Where, as here, plaintiffs allege discriminatory and unlawful systemic or policy-level actions, certification under Rule 23(b)(2) is proper, and in fact this case presents a "prime example[]" of the type of case for which Rule 23(b)(2) certification is particularly appropriate. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of Rule 23(b)(2) cases.). On the claims for which they seek class certification, Plaintiffs seek injunctive and declaratory relief as well as costs and fees, but do not seek compensatory damages. (*See* 2d Am. Compl. at Prayer For Relief at ¶¶ 1 & 3 & 5.) Plaintiffs allege that Defendants engage in an unlawful and discriminatory policy, pattern and/or practice by which they deprive Plaintiffs and putative class members of their rights under federal statute and regulation. They allege that this policy, pattern and/or practice is triggered by their status as Disabled Section 8 Households, regardless of their particular disabilities, such that Defendants allegedly act on

grounds generally applicable to all named plaintiffs and putative class members.  On this basis, the Court determines that Rule 23(b)(2) is satisfied.

    D.    *Conclusion as to Class Certification*

The Court concludes that all requirements for class certification under Rule 23(a) and (b) have been met, and that class certification is appropriate here.[8]

    E.    *Appointment of Class Counsel*

If the Court certifies a class, it "must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, it "must consider" the counsel's work "in identifying or investigating potential claims in the action," her "experience in handling class actions, other complex litigation, and the types of claims asserted in the action," her "knowledge of the applicable law," and "the resources that the counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). It may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs move to appoint their counsel, Jennifer C. Vickery, as class counsel (Pls.' Mot. App't Class Counsel [Doc. # 101]), to which Defendants have no objection.  Attorney Vickery avers that she served as "appointed class counsel in a similar fair housing matter," that she has "been involved in litigating civil rights, housing and discrimination claims for the entirety of [her] legal career," and that she is "familiar with the problems experienced by persons with disabilities in trying to rent decent housing within the City of New Haven." (*Id.* at Ex. 1 at ¶¶ 3–5.)  *See also Matyasovszky v. Bridgeport Housing Auth.*, 226 F.R.D. 35 (D.

---

[8] At oral argument Plaintiffs agreed that if the Court were to certify a class the Motion to Intervene by Plaintiffs and Proposed Intervenor Grady Reynolds [Doc. # 83] should be denied.  Because a class is certified, the Motion to Intervene is denied.

Conn. 2005) (granting class certification to plaintiffs represented by Attorney Vickery and another attorney). On these bases, and absent objection, the Court concludes that Attorney Vickery will be able to fairly and adequately represent the interests of the class.

### III.    Conclusion

For the foregoing reasons, Grady Reynolds and Plaintiffs' Motion to Intervene [Doc. # 83] is DENIED, Plaintiffs' Motion for Class Certification [Doc # 46] and Motion to Appoint Class Counsel [Doc. # 101] are GRANTED, and the following class is certified with Plaintiffs' counsel, Jennifer C. Vickery, as class counsel:

> All households including at least one handicapped person to which the Housing Authority of New Haven has issued a Housing Certificate or Housing Voucher, and:
>
> (a)   that did not receive a list of available, accessible apartments, as required under 42 U.S.C. § 3604(f), 24 C.F.R. § 100.204, and/or 24 C.F.R. § 8.28(a)(3); and/or
>
> (b)   that did not receive Mobility Counseling services, or offer thereof, as required under 42 U.S.C. § 3604(f), 24 C.F.R. § 100.204, and/or 24 C.F.R. § 8.28(a)(3).

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 9th day of March, 2009.